**164**

### GRANITE MANAGEMENT CORPORATION, Plaintiff,

v.

### The UNITED STATES, Defendant,

### No. 95–515C.

United States Court of Federal Claims.

Jan. 10, 2003.

Charles J. Cooper, Washington, D.C., attorney of record for plaintiff and Michael W. Kirk and David H. Thompson, of counsel, Washington, D.C. Michael A. Kahn and Michael F. Kelleher, of counsel, San Francisco, California.

Delfa Castillo, Department of Justice, Washington, D.C., and David C. Hoffman, Arlene Pianko Groner and Tarek Sawi, of counsel, with whom was Deputy Assistant Attorney General Stuart E. Schiffer, for defendant. David M. Cohen, Director, and Jeanne E. Davidson, Assistant Director.

## *OPINION*

FUTEY, Judge.

This matter is before the court on its order directing plaintiff to show cause why its takings claim should not be dismissed in light of the United States Court of Appeals for the Federal Circuit's (Federal Circuit) decision in *Castle, et al. v. United States,* 301 F.3d 1328 (Fed.Cir.2002). Plaintiff asserts that dismissing its takings claim prior to resolving contractual liability and damages is premature because it is unclear if plaintiff will receive "just compensation" for defendant's breach of contract. Defendant contends that plaintiff's takings claim is identical to that considered in *Castle* and should be dismissed.

### *Factual Background*

This case presents facts and issues which permeate throughout *Winstar*-related cases.[1] Plaintiff, Granite Management Corporation, acquired failing thrifts in return for favorable regulatory treatment. Plaintiff was permitted to "count supervisory goodwill created by the acquisitions as part of regulatory capital and [to] amortize that goodwill for regulatory capital purposes, and ... [to treat] cash contributed by [the Federal Savings and Loan Insurance Corporation (FSLIC) ] ... as part of the regulatory capital of [plaintiff's] subsidiaries."[2] Following the enactment of Financial Institutions Reform, Recovery and

---

1. The facts were discussed in greater detail in the court's opinion in *Granite Management Corp. v. United States,* 53 Fed.Cl. 228 (2002). Only facts relevant to this opinion are recited herein.

2. Plaintiff's (Pl.'s) Complaint ¶ 3.

Enforcement Act (FIRREA), plaintiff was no longer afforded incentives which were previously available.

In *Granite Management Corp. v. United States,* the court held that there was a contractual relationship between the parties and that defendant breached the contract when it enacted FIRREA. 53 Fed.Cl. 228 (2002). Since the court has already ruled on liability, the case is currently before the court to determine damages. On November 7, 2002, the court held a telephonic conference in this matter and lifted the stay on plaintiff's remaining counts. Pursuant to the telephonic conference, plaintiff voluntarily dismissed its implied-in-fact contract claim and promissory estoppel claim on November 22, 2002. Then, on November 25, 2002, plaintiff filed its response to the court's order to show cause why plaintiff's takings claim should not be dismissed. On December 6, 2002, defendant filed its response and on December 13, 2002, plaintiff filed its reply. All pertinent documents have therefore been submitted.

### Discussion

In *Castle,* the Federal Circuit held, *inter alia,* that the government's enactment of FIRREA did not constitute a taking of the plaintiffs' property. 301 F.3d at 1341–43. The court placed particular emphasis on the fact that the plaintiffs were not precluded from seeking contractual remedies and damages. *Id.* at 1341–42 ("[T]he government did not take the plaintiffs' property because they retained 'the range of remedies associated with the vindication of a contract.'") (quoting *Castle v. United States,* 48 Fed.Cl. 187, 219 (2000)). Further, the court noted that "the alleged contract did not create a reasonable expectation that the government would cease regulating the thrift industry, or any particular thrift therein." *Castle,* 301 F.3d at 1342 (relying on *United States v. Winstar Corp.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996)). Therefore, the government's enactment and enforcement of FIRREA was a breach of contract and the Federal Circuit was unwilling to extend takings law into *Winstar*-related cases.

Plaintiff maintains that its takings claim is distinguishable from the takings claim in *Castle* because plaintiff does not seek "just compensation beyond damages for breach of contract." *Castle,* 301 F.3d at 1342. Plaintiff asserts that it only seeks traditional contract damages, but that it may not recover said damages if the court adopts defendant's position as to restitution damages. Defendant maintains that lack of a "complete" contract remedy is an insufficient basis for permitting a takings claim. Defendant also avers that plaintiff's takings claim is indistinguishable from the takings claim in *Castle.*

The Federal Circuit "has cautioned against commingling takings compensation and contract damages." *Hughes Communications Galaxy, Inc. v. United States,* 271 F.3d 1060, 1070 (Fed.Cir.2001); accord *Home Sav. of America, F.S.B. v. United States,* 51 Fed.Cl. 487, 496 (2002). With this statement in mind, the court will examine the arguments advanced by plaintiff before addressing the precedential impact of *Castle* on the present case.

In *Home Savings,* this court opined:

[T]he lack of a "complete" contract remedy, either because it would not include interest or because the contract theory does not yield a recovery, does not give life to a takings theory. If the contract remedy does not produce a recovery, it is because the contract did not give a right to a recovery. In the absence of that contract remedy, no other property right is implicated.

*Home Savings,* 51 Fed.Cl. at 495–96. Plaintiff concedes that the aforementioned principle is "undoubtedly correct in the vast majority of cases . . . ."[3] Plaintiff asserts, however, that if the court adopts a new measure of restitution damages, plaintiff will not be entitled to the reasonable, investment-backed expectation of traditional contract damages. Plaintiff's argument is unpersuasive. It seeks to shift the theory of recovery merely because plaintiff's contract-based theory may not yield the recovery it desires. Plaintiff is still entitled to "the full range of remedies associated with any contractual property right [it] possessed." *Castle,* 301 F.3d at

---

**3.** Pl.'s Reply to Defendant's Response to Pl.'s    Response to Order to Show Cause, at 4.

1342. The amount of damages, if any, will vary on a case-by-case basis, but this does not give rise to a takings claim. *Home Savings,* 51 Fed.Cl. at 495–96 (citing *Hughes,* 271 F.3d at 1070).

Plaintiff asserts that "[i]f the government has provided an adequate process for obtaining compensation, *and* if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." *Preseault v. I.C.C.,* 494 U.S. 1, 11, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) (quoting *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 194–95, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (emphasis added)). In these cases, however, the Court was providing guidance as to when takings actions in general are ripe for review. *Preseault,* 494 U.S. at 11–12, 110 S.Ct. 914; *Williamson County,* 473 U.S. at 194–95, 105 S.Ct. 3108. In this case, the issue is not whether plaintiff's takings claim is ripe for judicial review, but whether a takings action can be maintained at all.

Plaintiff further avers that since prejudgment interest is not available as a contractual remedy it will not receive just compensation.[4] Plaintiff's attempt to obtain prejudgment interest illustrates the inappropriateness of its takings claim in the *Winstar* context. Arguments that prejudgment interest should be awarded have been consistently rejected. *Library of Congress v. Shaw,* 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) ("In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award."); *Hughes,* 271 F.3d at 1070 (explaining that the United States Court of Federal Claims' denial of prejudgment interest was proper); *Castle,* 48 Fed.Cl. at 219; see also *Bluebonnet Sav. Bank, F.S.B. v. United States,* 47 Fed.Cl. 156, 183–84 (2000). Although contractual remedies do not permit recovery of prejudgment interest, plaintiff seeks to circumvent this prohibition by cloaking its claim in takings law. Allowing plaintiff to proceed in this manner would mean that "nearly all Government contract breaches would rise to compensation under the Fifth Amendment." *Hughes,* 271 F.3d at 1070. The court is unwilling to open such a loophole.

Turning now to the dispositive question before the court: whether *Castle* warrants the dismissal of plaintiff's takings claim. The court's answer to the question is in the affirmative. Both *Castle* and *Granite* fall within the *Winstar* context. *Castle,* 48 Fed.Cl. at 191–93; *Granite,* 53 Fed.Cl. at 229–37. All causes of action arose from the government's breach of contractual promises with the enactment and enforcement of FIRREA. *Castle,* 48 Fed.Cl. at 191; *Granite,* 53 Fed.Cl. at 231. In addition, the takings claim in this case cannot be distinguished from the takings claim in *Castle.*[5] As discussed above, plaintiff's argument as to restitution damages and prejudgment interest does not advance its takings claim. In this regard, plaintiff has neither been deprived a contractual remedy nor a cause of action for damages. *Castle,* 301 F.3d at 1342. The court previously determined that defendant is liable for a breach of contract and plaintiff is not precluded from seeking "the full range of remedies associated with any contractual property right [it] possessed." *Id.*

Further, for this court to find that plaintiff's takings claim should not be dismissed would require the court at the very least to assume that the enactment and enforcement of FIRREA may constitute a taking. The Federal Circuit, however, expressly rejected such an argument in *Castle. Id.* at 1341–42. Plaintiff, just as the plaintiffs in *Castle,* did not have "a reasonable expectation that the government would cease regulating the thrift industry, or any particular thrift therein."

---

4. Pl.'s Response to Order to Show Cause, at 2 n. 1 ("[Plaintiff] does seek prejudgment interest as part of just compensation . . . .").

5. Akin to *Castle,* plaintiff asserts:
[its] right to treat the goodwill created by the [supervisory thrift acquisitions] as an asset for regulatory capital purposes, to amortize that goodwill over twenty-five years on a straight-line basis, and to count the cash contributed by FSLIC towards its subsidiaries' regulatory capital, constitute property protected by the Fifth Amendment to the United States Constitution. Pl.'s Complaint ¶ 82.

*Id.* at 1342 (citing *Winstar*, 518 U.S. at 844, 116 S.Ct. 2432 (explaining that the "[b]anking industry is one of the longest regulated and most closely supervised of public callings.") (citation omitted)). "At most, the contract promised either to regulate [plaintiff] consistently with the contract's terms, or to pay damages for breach." *Id.* (citing *Winstar*, 518 U.S. at 919, 116 S.Ct. 2432 (Scalia, J., concurring) ("Virtually *every* contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of nonperformance ....") (emphasis in original)). Plaintiff's cause of action therefore is in contract, not takings law. The court is bound by the Federal Circuit's decision and plaintiff has not convinced the court that its takings claim is distinguishable from the takings claim in *Castle*.

### Conclusion

For the above-stated reasons, and in light of the Federal Circuit's decision in *Castle*, plaintiff's takings claim is DISMISSED.

IT IS SO ORDERED.