**FIRST FEDERAL SAVINGS BANK OF HEGEWISCH, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 93–162C.

United States Court of Federal Claims.

July 17, 2003.

Theodore A. Shapero, Chicago, Illinois, attorney of record for plaintiff and Mark A. Rabinowitz, co-counsel, Chicago, Illinois.

Edward P. Sullivan, Department of Justice, Washington, D.C., with whom was Deputy Assistant Attorney General Stuart E. Schiffer, for defendant. David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director. Jeffrey T. Infelise, Of Counsel.

## *OPINION*

FUTEY, Senior Judge.

This matter is before the court on defendant's motion to dismiss plaintiff's takings claims. Defendant asserts that plaintiff's takings claims should be dismissed in light of the United States Court of Appeals for the Federal Circuit's (Federal Circuit) decision in *Castle, et al. v. United States,* 301 F.3d 1328 (Fed.Cir.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 2572, 156 L.Ed.2d 602 (2003). Plaintiff does not attempt to distinguish its case from *Castle,* but sets forth several well-known takings arguments. Plaintiff, relying on *Franconia Associates v. United States,*

240 F.3d 1358 (Fed.Cir.2001), *rev'd,* 536 U.S. 129, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002), contends that the passage of legislation abolishing a contractual right can constitute an unconstitutional taking. Plaintiff also maintains that defendant should be liable for a taking because it was acting in its sovereign capacity as opposed to its proprietary capacity when it allegedly took plaintiff's contract rights. Further, plaintiff avers that defendant's appropriation of its contract rights for public use is a compensable taking.

## *Factual Background*

This case presents facts and issues that permeate *Winstar*-related cases.[1] Plaintiff, First Federal Savings Bank of Hegewisch, entered into an agreement with defendant to acquire a failing thrift in return for favorable regulatory treatment. The enactment of the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), however, extinguished plaintiff's previously negotiated contract rights.

In *First Federal Savings Bank of Hegewisch v. United States,* the court held, *inter alia,* that the parties had a contractual relationship that allowed plaintiff to use the purchase method of accounting and to include goodwill for capital regulatory compliance purposes. 52 Fed.Cl. 774, 798–99 (2002). The court further held that the enactment of FIRREA breached this contract. *Id.* at 799. Because the court stayed resolution of plaintiff's takings claims pending a ruling on its breach of contract claim, the court did not address the takings claims in its July 3, 2002, Opinion and Order. The government had, however, moved to dismiss plaintiff's takings claims in its November 15, 1999, motion to dismiss.

During a telephonic status conference held on September 5, 2002, the court requested that plaintiff respond to the merits of defendant's motion to dismiss plaintiff's takings claims. On May 5, 2003, plaintiff filed its Response In Opposition To Government's Motion To Dismiss Takings Claims (Counts

---

1. The facts were discussed in greater detail in the court's opinion in *First Federal Savings Bank of Hegewisch v. United States,* 52 Fed.Cl. 774 (2002). Only facts relevant to this opinion are recited herein.

IV, V, VI and VII) Of Amended Complaint. In its Response, plaintiff voluntarily withdrew Counts VI and VII of its Amended Complaint, and its claims for prejudgment interest under Counts IV through VII.[2] Defendant filed its Reply In Support Of Its Motion To Dismiss on May 16, 2003. All pertinent documents have been submitted, and Counts IV and V of plaintiff's Amended Complaint are, therefore, ready for disposition.

### Discussion

Although plaintiff advances several peripheral arguments in a final attempt to prevent its remaining takings claims from being dismissed, plaintiff's arguments do not address the Federal Circuit's decision in *Castle*. Plaintiff does acknowledge the holding in *Castle*, but makes no effort to distinguish its takings claims from the takings claim dismissed therein. Rather, plaintiff simply "prefers not to withdraw its takings claims in order to preserve those issues for appeal."[3] The court will, therefore, accept the task plaintiff poses and dismiss its takings claims.

The Federal Circuit's decision in *Castle* is dispositive of plaintiff's takings claims. *Castle*, 301 F.3d 1328. In *Castle*, the Federal Circuit held that the government's enactment of FIRREA did not constitute an unconstitutional taking of the plaintiffs' property. *Id.* at 1332. The court provided two rationales for its holding. First, the plaintiffs "retained the full range of remedies associated with any contractual property right they possessed." *Id.* at 1342. Second, "the alleged contract did not create a reasonable expectation that the government would cease regulating the thrift industry, or any particular thrift therein." *Id.* The court reasoned that the thrift industry is heavily regulated, and the defendant, by contracting with the plaintiff, did not create a reasonable expectation that no further regulations would be forthcoming. *Id.* at 1342 (citing *United States v. Winstar Corp.*, 518 U.S. 839, 844, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996)). Therefore, while the enactment and enforcement of

FIRREA constituted a breach of contract, it did not give rise to a takings claim.

There is simply no discernable difference between the takings claim in *Castle* and plaintiff's takings claims. Just as in *Castle*, plaintiff is not precluded from seeking the "full range" of contractual remedies and damages. *Id.* Further, plaintiff did not have, and the contract at issue did not create, a reasonable expectation that plaintiff would not be subject to government regulation in the future. *Id.* (citing *Winstar*, 518 U.S. at 844, 116 S.Ct. 2432 (explaining that the "[b]anking industry is one of the longest regulated and most closely supervised of public callings.")). Plaintiff has not provided any argument whatsoever to refute these conclusions and the Federal Circuit's decision stands uncontested.

Since the Federal Circuit's decision in *Castle*, this court has on several occasions dismissed takings claims in *Winstar*-related cases. *Detroit Edison Co. v. United States*, 56 Fed.Cl. 299, 303 (2003) (noting that it is inappropriate to permit a plaintiff "to pursue a takings remedy in order to circumvent the limitations inherent in its contractual relationship with the Government."); *Granite Mgmt. Corp. v. United States*, 55 Fed.Cl. 164, 167 (2003) (holding that the plaintiff's "cause of action therefore is in contract, not takings law."). Apart from the obvious implications of binding precedent, this court's dismissal of takings claims in *Winstar*-related cases should come as no surprise to plaintiff. Prior to the *Castle* decision, the Federal Circuit had long "cautioned against commingling takings compensation and contract damages." *Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed.Cir.2001) (citing *Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 572 F.2d 786 (1978)).

Lastly, the court addresses plaintiff's reliance on *Franconia Associates*, which arose in the context of the enactment of the Emergency Low Income Housing Preservation Act of 1987 (ELIHPA). *Franconia Assocs.*, 240 F.3d at 1360–62. By enacting ELIHPA, the government restricted the appellants' contract right to prepay their Farmers Home

---

**2.** Plaintiff's Response In Opposition To Government's Motion To Dismiss Takings Claims (Counts IV, V, VI and VII) Of Amended Complaint at 1 n. 1.

**3.** *Id.* at 4.

Administration loans. *Id.* at 1360. Plaintiff relies on the Federal Circuit's statements that "each appellant's contract prepayment right can be property for Fifth Amendment purposes[,]" *Id.* at 1365, and that "[t]he statute thus took away and conclusively abolished a material contract right." *Id.* at 1366. The Federal Circuit, however, held that the appellants' takings claims were barred by the statute of limitations.[4] *Id.*

This court previously rejected the same argument raised by plaintiff in *Home Savings of America, F.S.B. v. United States,* 51 Fed.Cl. 487, 496 (2002). The principal issue in *Franconia Associates* was whether the appellants' causes of action were filed outside the statute of limitations. *Franconia Assocs.,* 240 F.3d at 1360. Therefore, as this court stated in *Home Savings,* the Federal Circuit's statements should not be viewed "as an endorsement of the merits of plaintiffs' claim, but merely as a restatement of their allegations in order to anchor the court's finding of untimeliness." *Home Savings,* 51 Fed.Cl. at 496. Assuming that the Federal Circuit was commenting on the merits of the appellants' argument, it is noteworthy that *Franconia Associates* was decided prior to *Castle,* and the Federal Circuit did not distinguish, discuss, or cite to *Franconia Associates* in *Castle.*[5] *Franconia Associates,* therefore, does not assist plaintiff.

### Conclusion

For the above-stated reasons, and in light of the Federal Circuit's decision in *Castle,* plaintiff's takings claims (Counts IV and V) are hereby DISMISSED.[6]

IT IS SO ORDERED.

---

4. Although defendant only cites to the Federal Circuit's decision, the United States Supreme Court granted certiorari in part and held that "the Federal Circuit erred in dismissing petitioners' takings theory on the grounds of untimeliness." *Franconia Assocs. v. United States,* 536 U.S. 129, 149, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002).

5. Likewise, in *Castle,* the Federal Circuit held that the enactment and enforcement of FIRREA was not a taking without reference to whether the government: 1) was acting in its sovereign capacity as opposed to its proprietary capacity, and 2) appropriated the contract for public use.

6. As was discussed in the factual background, plaintiff voluntarily withdrew Counts VI and VII, and its claims for prejudgment interest under Counts IV through VII.